## APPEAL OF STOKES MILLING CO.

Docket No. 2323.   Submitted September 15, 1925.   Decided November 9, 1925.

> Evidence *held* insufficient to establish that the actual cash value of property at the time paid in for stock was clearly and substantially in excess of the par value of the stock issued therefor and that the Commissioner erred in his computation of the profits tax under section 328 of the Revenue Act of 1918.

*Morris D. Kopple, Esq.*, for the taxpayer.
*R. A. Littleton, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax in the amount of $15,290.45 for the fiscal year ending July 31, 1919. The petition alleged: (1) That certain property, consisting of a flour-mill plant and equipment, paid in during 1916 for $100,000 par value of stock, had an actual cash value at that time of $216,919.90, and that, therefore, a paid-in-surplus should be allowed in computing the invested capital for the taxable year; (2) that the Commissioner erred in computing depreciation upon a value of $85,000 determined by him, instead of upon the value of $201,919.90, claimed by taxpayer; and (3) that the Commissioner used improper comparatives in determining the profits tax under section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

Taxpayer is a South Dakota corporation with principal office at Watertown, engaged in the manufacture and sale of flour. It was organized in 1916, at which time it issued its entire common capital stock, consisting of 1,000 shares having a par value of $100 each, for a certain flour milling plant and equipment, which it entered upon its books at a value equal to the par value of the stock.

Prior to 1916, W. H. Stokes, Sr., had engaged in the manufacture and sale of flour under the name of W. H. Stokes Milling Co. For some time the business had not been a success and W. H. Stokes found himself without sufficient funds or credit with which longer to carry it on. For this reason the plant passed into the hands of a trustee. In 1916, W. H. Stokes, Sr., sold the entire property to certain individuals for $50,000. One of these was his son, W. H.

Stokes, Jr.   Upon the purchase of the property, the individuals immediately organized the taxpayer corporation and transferred the entire property to it for its entire capital stock of the par value of $100,000.   W. H. Stokes, Sr., received none of the stock and had no interest in the corporation.

On March 1, 1919, taxpayer had a detailed appraisal of its plant and equipment made for insurance purposes.   The appraisal was made as of January 19, 1918, on the basis of cost of reproduction, and fixed the reproduction cost for the entire plant and equipment, as of January 19, 1918, at $231,443.42, and the value at that time, exclusive of the value of the land, at $201,919.90.   The reproduction cost was arrived at by a personal inspection of the buildings and equipment and from data showing prices as of that date.   The January 19, 1918, value of $201,919.90 was the appraisers' estimate.   In its original return for the fiscal year ending July 31, 1918, taxpayer claimed an invested capital of $210,965.35, and in the amended return an invested capital of $256,678.21.   Included in these amounts was $216,919.90, the claimed value of the property paid in for $100,000 par value of the stock, which was made up of $201,919.90 as the value of the plant and equipment as fixed by the appraisal and $15,000 as the value of the land.   Upon audit the Commissioner determined the values of the plant and equipment, and land, to be $85,000 and $15,000, respectively, at the time paid in for the stock in 1916.   To the amount of $100,000 he added certain items not in dispute and determined an invested capital for the taxable year of $133,000.   The Commissioner computed the allowance for exhaustion, wear and tear of the depreciable property based upon the value of $85,000.

For reasons satisfactory to him, but which are not disclosed by the record, the Commissioner computed the profits tax under the provisions of section 328 of the Revenue Act of 1918.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON:   The questions presented by this appeal are:   (1) Whether taxpayer is entitled to a paid-in surplus for the fiscal year ending July 31, 1918, of $116,919.90 in respect of property paid in for stock of taxpayer in 1916;   (2) the allowance to which it is entitled for exhaustion, wear and tear of the property; and (3) whether the Commissioner erred in the computation of the profits tax under the provisions of section 328 of the Revenue Act of 1918.

The facts have been heretofore fully stated and upon these facts we are asked to reject the Commissioner's determination of the actual

cash value of the property paid in in 1916 for stock of the taxpayer, the allowance for exhaustion, wear and tear of such property, and to allow a paid-in surplus of $116,919.90 and a deduction for exhaustion, wear and tear upon a value of $201,919.90.

The evidence submitted is, in our opinion, wholly insufficient to show that the Commissioner's determination was erroneous in any respect.

Section 326 (a) (2) of the Revenue Act of 1918 provides:

That as used in this title the term " invested capital " for any year means * * *:

*        *        *        *        *        *        *

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *.

The evidence upon which the taxpayer relies, in support of its claim that the property paid in for stock had an actual cash value in 1916 clearly and substantially in excess of the par value of the stock issued therefor, is an appraisal made in March, 1918, as of January 19, 1918, for insurance purposes, based upon reproduction cost as of that date, from which reproduction cost was deducted the amount which the appraisers estimated to be the difference between reproduction cost and the present value of the assets. This appraisal, in the absence of any other supporting evidence, is of no practical value to the Board in determining the actual cash value of the property in 1916. It does not purport to have been made on the basis of actual cash value and, furthermore, even if the reproduction cost should represent the actual cash value, such cost, as shown by the appraisal, was based upon prices prevailing in 1918 instead of in 1916.

In the *Appeal of Hart Cotton Mills*, 2 B. T. A. 973, the Board said:

This valuation was arrived at by computations of the appraisal company based upon a replacement cost agreed to by both parties. After hearing the testimony of the three witnesses in support of the appraisal, we conclude that it is of no value whatever, and have entirely disregarded it in arriving at our determination of value. We have heretofore indicated that in our judgment such appraisals are entitled to little weight. *Appeal of Rockford Malleable Iron Works*, 2 B. T. A. 817; *Appeal of Tibby-Brawner Glass Co.*, 2 B. T. A. 918. It is not necessary for us to state again our reasons for these conclusions.

See also *Appeal of Spahr Brick Co.*, 2 B. T. A. 946.

From the evidence before us, we find no error in the Commissioner's determination of the value of the property paid in for stock for invested capital and depreciation purposes, and his determination is approved.

The next question concerns the Commissioner's computation of the profits tax under section 328 of the Revenue Act of 1918. The taxpayer alleged in its petition that the corporations selected by the Commissioner for the purpose of computing the taxpayer's profits tax under section 328 did not meet the requirements of that section. On July 14, the day before the appeal was set for hearing, the taxpayer procured the issuance of a subpœna for the production, by the Commissioner, of the comparatives used by him in the determination of the profits tax under section 328, and, in addition, the returns showing the tax assessed and the method adopted in the assessment of the tax for the years 1918 and 1919, of the following corporations:

W. J. Jennison Milling Co., Appleton, Minn.
Tenant & Hoyt Milling Co., Lake City, Minn.
The Empire Milling Co., Janesville, Minn.
The Big Diamond Milling Co., Morristown, Minn.
The Wabasha Milling Co., Wabasha, Minn.
The Red Wing Milling Co., Red Wing, Minn.
LaGrange Mills, Red Wing, Minn.

The Commissioner declined to produce the information called for in the subpœna and the taxpayer produced no evidence showing that the comparatives used by the Commissioner were improper or that the corporations claimed by it to be comparable were similarly circumstanced with respect to gross income, net income, profits per unit of business transacted, and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances.